*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
September 23, 2024
1:56 PM

Plaintiff-Appellee,

v

No. 364437
Oakland Circuit Court
LC No. 2021-276732-FC

PATRICK FREDRICKDEON LEAK,

Defendant-Appellant.

Before: CAMERON, P.J., and JANSEN and SWARTZLE, JJ.

PER CURIAM.

Defendant was convicted at trial of assault with intent to do great bodily harm less than murder (AWIGBH), MCL 750.84. The trial court sentenced defendant as a fourth-offense habitual offender, MCL 769.12, to 15 to 45 years in prison. We affirm defendant's conviction, but vacate his sentence and remand for resentencing.

## I. BACKGROUND

In September 2020, codefendant Henry Simms called the victim, Mauricio Miller, and told him to come to codefendant Patricia Osborn's apartment, either for Simms to pay a debt to Miller or for Miller to sell drugs to Simms. While Miller, Simms, and Osborn were in the apartment, defendant entered and hit Miller in the head with a wrench. According to Miller, he tried to fight off defendant, Osborn, and Simms as they tried to hold him down and reach into his pockets. Osborn and Simms left at some point, but defendant and Miller continued to struggle. Defendant was swinging an object, and Miller reached for it. Several of Miller's fingers were severed by a knife. Surveillance footage from the hallway outside of the apartment showed defendant walking into the apartment with a wrench, and, later, Miller backing out of the apartment with defendant holding onto his shirt with one hand and holding a wrench above his head in his other hand. Miller slipped out of his shirt and ran away.

Codefendants Osborn and Simms each pleaded guilty to unarmed robbery. Miller had a prior assaultive conviction, and, before trial, defense counsel attempted to obtain information about that victim. The prosecutor and officer-in-charge of this case assisted the defense in attempting to contact that victim. The prosecutor also moved the trial court to exclude the evidence, and the trial

court took the motion under advisement, depending on what occurred at trial. Miller's victim did not testify at trial.

At defendant's trial, Miller, Simms, and Osborn testified that defendant hit Miller with an object, and Simms and Osborn identified the object as a wrench. Simms and Osborn testified that Miller did not attack or provoke defendant. Detective Sean Burney testified about a picture of Miller's head injury from the incident.

Defendant testified that he had carried the wrench for protection, but he did not swing it at Miller. Defendant claimed that Miller cut defendant's face.

In closing, the prosecutor argued that he did not "even have to address the knife" because defendant's assault of Miller with the wrench was AWIGBH. The defense argued that the incident could not have happened as the prosecutor's witnesses described in the short time the video showed the parties as being inside the apartment and that Miller cut defendant with the knife. The defense highlighted that the prosecutor did not have the knife handle fingerprinted and did not present the knife as evidence, arguing that this left the jury with reasonable doubt.

The jury found defendant guilty as charged of AWIGBH, but acquitted him of an additional charged of armed robbery, MCL 750.529.

At sentencing, the trial court assessed 50 points for Prior Record Variable (PRV) 1; five points for PRV 2; two points for PRV 5; and 10 points for PRV 6. The trial court assessed 25 points for Offense Variable (OV) 1; five points for OV 2, 25 points for OV 3; 10 points for OV 4; 50 points for OV 7, and 15 points for OV 10. As a fourth-offense habitual offender, defendant's sentencing guidelines provided for a minimum sentence range of 38 to 152 months in prison. The trial court departed from this range and imposed a minimum sentence of 15 years, explaining that it could not "overcome that the evidence presented at trial is of a very severe and very brutal crime from a defendant who has a history of severe and brutal criminal activity." Defendant's history included convictions for first-degree criminal sexual conduct, armed robbery, felon-in-possession of a firearm, and domestic violence.

Defendant now appeals. Defendant also moved to remand for an evidentiary hearing, and this Court denied his motion. *People v Leak*, unpublished order of the Court of Appeals, entered November 22, 2023 (Docket No. 364437).

## II. ANALYSIS

### A. SUFFICIENCY OF THE EVIDENCE

We review de novo a challenge to the sufficiency of the evidence. *People v Miller*, 326 Mich App 719, 735; 929 NW2d 821 (2019). We review the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *Id*.

MCL 750.84(1)(a) prohibits the assault of "another person with intent to do great bodily harm, less than the crime of murder." The elements of AWIGBH are: "(1) an attempt or threat with force or violence to do corporal harm to another (an assault), and (2) an intent to do great

bodily harm less than murder." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016) (cleaned up). Minimal circumstantial evidence may establish a defendant's state of mind. *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

Viewed in the light most favorable to the prosecution, there was sufficient evidence to find beyond a reasonable doubt that defendant assaulted Miller with an intent to commit great bodily harm. See *Miller*, 326 Mich App at 735. There was evidence that defendant hit Miller in the head with a wrench and severed Miller's fingers with a knife. Defendant focuses on "conflicting" evidence addressing whether he severed Miller's fingers, but fails to acknowledge the overwhelming evidence demonstrating that he struck Miller in the head with the wrench. The surveillance footage showed defendant holding what appears to be the wrench as he entered the apartment and then later holding onto Miller's shirt with one hand, with the wrench clearly raised in his other hand. Miller, Simms, and Osborn testified about seeing defendant hit Miller with the wrench. Defendant also admitted to having the wrench. This, even without considering evidence about Miller's fingers being severed, was sufficient to support the conviction.

Although defendant argues that the witnesses were not credible, and the jury should have believed his version of events, the weight and credibility of the evidence were issues for the jury to resolve. See *People v Mikulen*, 324 Mich App 14, 20; 919 NW2d 454 (2018). This Court will not interfere with the jury's role. See *id*.

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

In his Standard 4 brief, defendant argues that trial counsel was ineffective for several reasons. Defendant's right to counsel is guaranteed by the United States and Michigan Constitutions. US Const, Am VI; Const 1963, art 1, § 20. This right includes the right to the effective assistance of counsel. *People v Cline*, 276 Mich App 634, 637; 741 NW2d 563 (2007). "Whether a defendant has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v Solloway*, 316 Mich App 174, 187; 891 NW2d 255 (2016). Because this Court denied defendant's motion to remand for a *Ginther*[1] hearing, we review his ineffective-assistance-of-counsel claims for errors apparent on the record, although we retain the authority to remand for an evidentiary hearing if one is needed. See *People v Horn*, 279 Mich App 31, 37-38; 755 NW2d 212 (2008).

To establish a claim of ineffective assistance of counsel, defendant must show that: (1) defense counsel's performance was deficient; and (2) the deficient performance prejudiced the defense. *People v Taylor*, 275 Mich App 177, 186; 737 NW2d 790 (2007). Defense counsel's performance is deficient if it fell below an objective standard of professional reasonableness. *People v Jordan*, 275 Mich App 659, 667; 739 NW2d 706 (2007). Defendant must show that counsel made errors so serious that counsel was not performing as guaranteed by the Sixth Amendment, and "defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy." *People v Carbin*, 463 Mich 590, 599-600; 623 NW2d 884 (2001), citing *Strickland v Washington*, 466 US 668, 104 S Ct 2025, 80 L Ed 2d 674 (1984). The performance will be deemed to have prejudiced the defense if it is reasonably probable that, but

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

for counsel's error, the result of the proceeding would have been different. *Jordan*, 275 Mich App at 667. A defendant has the burden of establishing the factual predicate for an ineffective-assistance-of-counsel claim. *People v Douglas*, 496 Mich 557, 592; 852 NW2d 587 (2014).

Defendant first argues that defense counsel was ineffective for failing to obtain fingerprint analysis of the knife's handle to prove that Miller possessed the knife. Defendant has not shown that results from such testing would have been exculpatory. See *id*. Defense counsel argued at trial that there was reasonable doubt because the prosecutor failed to do a fingerprint analysis of the knife or present the knife itself as evidence. This argument supported the defense's theory that Miller was armed with the knife and attacked defendant, and did not fall below an objective standard of professional reasonableness. See *Jordan*, 275 Mich App at 667. "A particular strategy does not constitute ineffective assistance of counsel simply because it does not work." *People v Matuszak*, 263 Mich App 42, 61; 687 NW2d 342 (2004). Moreover, as previously noted, defendant's conviction was sustainable by evidence of defendant hitting Miller with the wrench, so further evidence about the knife was not reasonably likely to affect the outcome of the proceedings. See *Jordan*, 275 Mich App at 667.

Next, defendant argues that defense counsel was ineffective for failing to obtain or have the prosecutor produce Miller's medical records to prove that Miller did not suffer a head injury consistent with being struck with a wrench. Again, however, defendant has not made an offer of proof that Miller's medical records would have supported this supposition. See *Douglas*, 496 Mich at 592. Instead, Miller, Simms, and Osborn all testified that defendant hit Miller with the wrench, and a detective testified about Miller having a visible head injury following the incident. Because evidence of an actual injury is not necessary to prove AWIGBH, see *People v Stevens*, 306 Mich App 620, 629; 858 NW2d 98 (2014), trial counsel may have chosen not to highlight the injuries that Miller sustained, as it is without dispute that Miller's fingers were severed. With the significant evidence that defendant at least struck Miller, defendant has not shown that a reasonable probability exists that, but for counsel's failure to use Miller's medical records, the outcome of the proceedings would have been different. See *Jordan*, 275 Mich App at 667.

Defendant also argues that trial counsel was ineffective for failing to obtain an expert to clarify how the DNA and the crime scene supported defendant's version of the events and to explain the dangers of a front-locking knife. Defendant has not made an offer of proof regarding the substance of potential expert testimony. See *Douglas*, 496 Mich at 592. Defendant's mere speculation that an expert might be able to provide unspecified favorable testimony is insufficient to show that the failure to call an expert was objectively unreasonable or that there is a reasonable probability that the outcome of trial would have been different.

Next, defendant argues that trial counsel was ineffective for failing to investigate and present evidence of Miller's violent criminal history. First, trial counsel sought prosecutor assistance to locate Miller's victim, and argued before the trial court that that victim's testimony might be relevant. Further, defendant has not established that the victim's testimony would have been admissible, or even beneficial. Accordingly, defendant has not established that trial counsel was objectively deficient in this instance or that defendant was prejudiced by the performance.

Defendant additionally argues that trial counsel was ineffective for failing to ensure that his sentencing guidelines were scored consistently with those of his codefendants. Defendant does

not, however, provide any information about the codefendants' guidelines and fails to identify on what basis trial counsel should have challenged any assessments of points. Moreover, the codefendants were convicted, by plea, of unarmed robbery, rather than of AWIGBH.

Finally, a *Ginther* hearing is not required when further factual development would not advance defendant's claim. See *People v Chapo*, 283 Mich App 360, 368-369; 770 NW2d 68 (2009). Therefore, we decline to remand the matter for an evidentiary hearing.

## C. SENTENCE

The trial court did not, however, properly support its upward-departing sentence. "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 392; 870 NW2d 502 (2015). This Court reviews whether the trial court abused its discretion by violating the "principle of proportionality," which requires that a sentence be proportionate to the seriousness of the offense and the offender. *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017). Although sentencing guidelines are only advisory, they are "a highly relevant consideration in a trial court's exercise of sentencing discretion that trial courts must consult and take into account when sentencing." *Id*. at 474-475 (cleaned up). The relevant question is whether the sentence is proportionate to the offense and offender, rather than whether it departs from the guidelines. *Id*. at 460, 475.

When a trial court departs from the sentencing guidelines, "it must justify the departure on the record by explaining why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been." *People v Odom*, 327 Mich App 297, 315; 933 NW2d 719 (2019) (cleaned up). Relevant considerations for the proportionality of a sentence include whether the guidelines accurately reflect the seriousness of the offense and whether there are factors that the guidelines did not consider or adequately consider. *Id*.

In this case, the trial court did not properly articulate why the sentence it imposed was more proportionate to the offense and offender than a different sentence would have been. See *id*. The trial court briefly noted that "the evidence presented at trial is of a very severe and very brutal crime from a defendant who has a history of severe and brutal criminal activity." This statement does not, however, specify why this specific sentence was appropriate.

The trial court did not explain how or if the brutality of the offense was not reflected by the 50 points assessed for OV 7, which requires an assessment of 50 points if a victim "was treated with sadism, torture, excessive brutality or similarly egregious conduct designed to substantially increase the fear and anxiety a victim suffered." MCL 777.37(1)(a). "For purposes of OV 7, excessive brutality means savagery or cruelty beyond even the usual brutality of a crime." *People v Rosa*, 322 Mich App 726, 743; 913 NW2d 392 (2018) (cleaned up). Similarly, the trial court did not properly explain why defendant's PRV score did not account for defendant's history.

The trial court may have determined that the departure and its extent were justified. It must, however, provide sufficient articulation for appellate review. See *Odom*, 327 Mich App at 315. Accordingly, this case must be remanded for the trial court to articulate why defendant's sentence is warranted or to resentence defendant. See *People v Bunch*, 505 Mich 874, 874; 935 NW2d 366 (2019).

We affirm defendant's conviction, but vacate his sentence and remand for resentencing. We do not retain jurisdiction.

/s/ Thomas C. Cameron
/s/ Kathleen Jansen
/s/ Brock A. Swartzle